102 So.2d 480

**Mrs. Mathilde T. CODDOU et al.**

**v.**

**Charles GROS.**

No. 43500.

April 21, 1958.

Rehearing Denied May 26, 1958.

Talbot, LeSueur & Talbot, Napoleonville, for plaintiff-appellant.

Glynn A. Long, Donaldsonville, Henican, James & Cleveland, C. Ellis Henican, New Orleans, for defendant-appellee.

SIMON, Justice.

In this petitory action the plaintiffs,[1] widow and forced heirs of Louis Coddou, asserted title to and sought to recover pos-

---

1. Originally this action was filed on April 3, 1948, by (1) Mathilde Truxillo, window of Louis Coddou; (2) Willie Coddou; (3) Charlie Coddou; (4) Anna Coddou Toups; (5) Carrie Coddou Toups; (6) Lucille Coddou Gremillion; (7) Harry Coddou; (8) Edna Coddou Babin; and (9) Hattie Coddou Roberts. Following the death of Mrs. Mathilde Truxillo Coddou on March 23, 1951 her heirs, the remaining original plaintiffs, were duly authorized to prosecute this litigation in lieu of said decedent and in behalf of themselves. Following the death of Anna Coddou Toups on May 14, 1952 and subsequent to the rendition of the judgment by the trial judge, her heirs, William J. Toups, Thomas J. Toups, Barbara Toups Hanks, Winnie Toups Landry and Martha Toups Rhodes, were duly authorized to prosecute this litigation in her place and stead.

session of two adjacent tracts of land situated in the Parish of Assumption, described as follows:

"A certain lot of ground situated in the Parish of Assumption, State of Louisiana, on the right descending bank of Bayou Lafourche, measuring one half arpent front on said Bayou Lafourche, on a depth of three acres, more or less; bounded below by Gaston Gros, now or formerly, above by Elphege Landry, and in the rear by Ernest LeBlanc; together with all the buildings and improvements thereon and thereunto belonging. It being the same property acquired by Chas. Gros from Leo LeBlanc on the 6th day of February, 1918 by act passed before Geo. S. Guion, Notary. Recorded in C. Book 56, folio 574.

"2nd: Another tract of land situated in the Parish of Assumption, and State of Louisiana, on the right descending bank of Bayou Lafourche, measuring one half arpent front on said Bayou Lafourche on a depth of Eighty arpents, more or less; bounded below by lands now or formerly of Neville LeBlanc, above by lands formerly belonging to Aurelien Dosset, in the rear by land formerly belonging to Marcellin Landry, between converging lines from the front to the forty arpent line and from the forty arpent line to the eighty arpent line, between opening lines, and containing in superficies Thirty-five arpents, more or less. Being the same property acquired by Charlie Gros from Ernest J. LeBlanc by act passed before Geo. S. Guion, on Dec. 17th, 1918, recorded in Conv. Book 57, folio 18, of Assumption Parish. Together with all the buildings and improvements on said property."

The trial court rendered judgment in favor of defendant and against the plaintiffs, dismissing their suit, and plaintiffs appealed.

The defendant acquired the two tracts of land by separate credit sales dated February 6, 1918 and December 17, 1918, respectively. The purchase price of the first tract was shown to be $700, in part payment of which the purchaser paid $100 in cash and for the balance he executed three promissory notes each for the sum of $200, payable one, two and three years after date. The second tract of land was acquired for the price of $1,000, for which price the purchaser executed one promissory note for the sum of $1,000 with interest at 8 per cent per annum, payable one year after date. The said notes were paraphed "ne varietur" with their respective acts, each act granting in favor of the respective vendors, and of all future holder or holders of said notes, a special mortgage, vendor's lien and privilege on the property therein conveyed. Each act further authorized executory proceedings and confession of judgment in case of nonpayment of said notes after their respective dates of maturity.

Louis Coddou became the holder of the said promissory notes in or about the year

1919 and by certain payments made during the years 1919 to 1934 the mortgage indebtedness due thereon was reduced to $1140.

On January 10, 1934, Gros executed an act of sale to Louis Coddou, transferring the two above-described tracts of land for the price of $1140 cash, said act containing the following redemptive clause: "The purchaser, Mr. Coddou, hereby agrees that the said Charlie Gros, vendor, shall have the right to redeem the herein described property within two years from date hereof at the same price as in this sale."

Following the sale of 1934 the vendor continued to occupy the land and as of January 10, 1936, the date the two-year redemptive period expired, he had not exercised his right of redemption. Prior to the sale of January 10, 1934, the vendor was assessed with and had paid all annual taxes levied on the property. Thereafter the purchaser, Louis Coddou, was assessed with and paid all annual taxes.

In addition to the payment of taxes Louis Coddou exercised other acts of ownership. On June 10, 1941 he executed a mineral lease on said property and on September 29, 1941 he sold an undivided one-half mineral interest in said land. Notwithstanding Gros' personal knowledge of these acts of ownership by Coddou the same were at no time protested by Gros, nor did he ever demand an accounting for the rents or fruits received thereby until the filing of his answer to this suit.

There is a conflict of views as to an alleged rental agreement between Coddou and Gros. Plaintiffs contend that after the expiration of the redemption period Gros agreed to pay the annual taxes levied against the property in lieu of the payment of rent. Gros admitted that he was requested to do so, but thereafter failed and refused to pay the said taxes for the reason that the property was not assessed in his name. Nevertheless, Coddou permitted Gros to retain possession of the property whereon Gros operated a syrup and a rice mill, conducted farming operations and received the benefits from these activities. He also pursued a carpenter's trade. Irrespective of his income from these activities, he paid no rental for the occupancy and use of the property, remaining undisturbed until 1946, at which time he received a written notice addressed to him by Coddou to vacate the premises within a period of fifteen days. In spite of said notice neither party took any affirmative action in connection therewith until the filing of this suit on April 3, 1948. The only plausible explanation seemingly acceptable to both parties for the voluntary failure on the part of Coddou to have instituted eviction proceedings is the relationship that existed between them, Mrs. Gros being the niece of Mrs. Coddou. Apparently this is one of the many examples of the sense of loyalty and the close family ties which traditionally existed among the old French families of

Louisiana, even including collateral relations to the second and third degree.

An indication of Gros' intention and understanding of the effect of the 1934 transaction as to ownership of the property in question was clearly made apparent by him when in giving his testimony in regard to an agreement to pay taxes in lieu of rent he said: "I didn't owe him nothing after he took the place back." A more positive indication of Gros' intention and understanding of the effect on the 1934 transaction was disclosed by him when he was asked whether he sought permission of Coddou to sell a rice mill and other machinery situated on the premises prior to 1935, his response thereto being, "No, it was mine. That's movable."

Gros further testified that on two occasions during the redemptive period, specifically during the months of July and December, 1935, he attempted to redeem the property, with no avail. Thereafter it is shown that no further attempts were made. Gros, his wife and his sister, Mrs. Mattingly, testified that Gros tendered actual cash to Coddou, the tenders having been made at the shelter on a bridge occupied by Coddou as a bridge tender. The testimony of Mrs. Gros and Mrs. Mattingly is that on both tenders Gros had the full amount of the redemptive price, however, on the other hand, Gros testified that on the second tender he did not have the full redemptive price. Notwithstanding the asserted failure of Coddou to have accepted these alleged tenders, Gros failed to initiate any legal proceedings to enforce his contractual right of redemption assigning ignorance of the law as the reason for said failure.

Harry Coddou, son of Louis Coddou and one of the plaintiffs herein, testified that at the time of the 1934 transaction his father was the holder in due course of the mortgage notes executed by Gros and that at that time the said notes were not cancelled, marked paid or surrendered. Nevertheless, it is clearly shown that from and after the date of the 1934 sale Coddou as the holder of said notes made no further attempt to collect the amount of the notes or the accruing interest thereon nor did Gros offer to make any further payments thereof, after having previously made annual payments of interest in the amount of $26 per year from 1919 to 1934. He further testified that in 1936 after the expiration of the redemptive period his father offered Gros the opportunity of redeeming the property, but which opportunity was not taken advantage of by Gros due to lack of available funds. He also testified that Gros agreed in his presence to pay the taxes annually assessed against the property in lieu of annual rents; that though Gros failed to discharge this agreement, he was never requested to vacate the premises until the written notice in 1946 addressed to Gros by Coddou.

Thus, plaintiff contends that the 1934 transaction was a valid sale with the right of redemption, the adequate consideration therefor being the cancellation and payment in full of the unpaid indebtedness evidenced by the mortgage notes executed by Gros and held by Coddou.

On the other hand, defendant contends that, notwithstanding the fact that the act of sale of 1934 recites the payment and receipt of the purchase price of $1140 cash, actually Coddou paid nothing to Gros either at that time or at any time thereafter, and that the said transfer was intended as a pignorative act intended to secure the indebtedness evidenced by the said mortgage notes held by Coddou.

It is not disputed that the said notes were not physically surrendered to Gros at the time of the 1934 transaction or that Coddou did not cause the record mortgage indebtedness to be cancelled on the records until 1941. The defendant points with emphasis to the fact that this cancellation coincided with the execution by Coddou of the above referred to mineral lease on the subject property. However, the record does not disclose any evidence as to exactly when the said notes were marked cancelled, their cancellation on the public records in 1941 being the only evidence thereof, or that any further demand was thereafter made for their payment. We think it is reasonable to presume that the mineral lessee or purchaser required an erasure of the encumbrance of the vendor's lien and mortgage notes bearing against the said property, which requirement the owner of the property would be bound to oblige and perform.

The contention that the 1934 transaction was executed as a pignorative act to secure payment of the mortgage notes is untenable in view of the undisputed fact that at the time of the 1934 transaction Coddou was the undisputed owner of the vendor's liens and mortgage notes bearing upon the property which Gros had executed in connection with the credit sales of 1918.

We are not convinced, under the surrounding circumstances, that the parties never intended that the 1934 transaction was executed for the purpose of furnishing security for the obvious reason that the then existing indebtedness was at that time already secured and guaranteed by a vendor's privilege and special mortgage bearing on the subject property.

In the case of Keough v. J. Meyers & Co., 43 La.Ann. 952, 9 So. 913, 915, the plaintiff therein contended that an ostensible sale with a redemption clause should be considered a mortgage and not a sale, or if not such, to be declared a nullity for lesion. The defendant contended that the transaction between the parties was a sale with a right of redemption and that by the failure of the vendor to pay the price agreed on within the redemptive period he had ceased to have any title to the property, and that the ownership vested absolutely in the de-

fendant purchasers. In considering the facts and circumstances of that case we held that the act was not a mortgage, but a valid sale; that the property was transferred for an adequate and just consideration; that the failure of Keough to redeem the property within the time limited had stripped him of all claim to the ownership which had thereby vested in the purchaser, saying:

"It may well be that the act of January 3, 1889, which is ostensibly a sale by Keough to Meyers & Co., the consideration of which was the return to him of his two notes of $875 each, aggregating $1,750, was not in reality a sale, as there was really no price paid or to be paid; but this would not make it to be a mortgage under any circumstance, for the very obvious reason that there existed no sensible reason for a transaction between the parties under that form, inasmuch as the debt which could have been thus secured was at that time guaranteed by a vendor's privilege and a special mortgage on the same property. "The transaction was rather a dation in payment of the property by Keough to Meyers & Co., in consequence of which his liability to them on the two notes was extinguished, which were cancelled and returned to him."

The defendant relies on the case of Marbury v. Colbert, 105 La. 467, 29 So. 871, and other cases adhering to the same principle cited therein, that a vendee in a sale with a right of redemption who permits the vendor to continue to possess the property long after the redemption period expired must prove by a preponderance of the evidence that the vendor's possession is not as owner.

Under the circumstances of this case as well as the relationship existing between the parties we think that a reasonable explanation has been given for the continued possession and occupancy by the vendor herein such as to exclude the idea of his still existing ownership. As a result of the close family relationship between the parties Coddou allowed Gros to possess and use the property and exercise all rights of ownership therein from 1919 until the transaction of 1934, notwithstanding that during this period of fifteen years the indebtedness represented by the mortgage notes was reduced from approximately $1600 to $1140, whereas by their express terms the said mortgage notes should have been paid and discharged in full by 1921. It is quite obvious to us that because of this relationship Coddou refrained from his rights of foreclosing under the vendor's liens and mortgages burdening the subject property.

Considering all of the surrounding facts and circumstances, we conclude that the 1934 instrument was a valid sale with the right of redemption. The effect of the said redemptive clause constituted a personal advantage in favor of Gros to be exercised or waived at his option. Having allowed the period of redemption to expire he must be held to have waived such right, render-

ing said stipulation as between the parites as though not written. Consequently upon his failure to exercise his right to redeem the property Coddou's title thereto became absolute and unassailable.

■ We consider the evidence conclusive that the parties did not intend the act of sale of 1934 to be a mere security but rather a bona fide sale with a right of redemption. The defendant herein executed a valid sale to his creditor in payment of his debt, stipulating his right of redemption. His failure to pay the price within the time agreed on in the contract forfeited his right of redemption and the title to the property was vested absolutely in the purchaser, Coddou. Furthermore, this act of sale concludes the defendant in the absence of error or fraud and establishes the nature of his possession as the possession of his vendee. Here there is no error or fraud alleged, much less proved. The family relationship of the parties, the assessment of the property in the name of and the payment of the annual taxes by Coddou from the date of the 1934 sale, the admission of Gros as to his lack of ownership in the immovable property and his agreement to pay the annual taxes for rent, the execution of a mineral lease and a sale of mineral interest in 1941 by Coddou without protest or objection by Gros and the receipts or benefits received therefrom by Coddou without demand for an accounting by Gros are convincing factors which point unerringly to the conclusion that this transaction of 1934 was an outright sale of the subject property.

In the case of Brooks v. Broussard, 136 La. 380, 67 So. 65, 66, we considered the effect of a right of redemption contained in an act of transfer and held as follows:

"The transaction on the face of the acts was a sale, with the privilege or option of repurchasing within a limited period of time, and for a higher price. In a sale with the right of redemption, the vendor reserves to himself the power of taking back the thing sold by returning the price paid for it. Civil Code, 2567. If such right is not exercised within the time agreed on by the vendor, the purchaser's title becomes absolute. Id., 2570. Hence, even considering the transaction as a sale with the right of redemption, a perfect legal title vested in the plaintiff on November 1, 1913.

"The purpose of the sale was to provide for the payment of all the incumbrances on the property, and to secure to the vendor a delay of nine months, within which to pay the sum agreed upon as the price of redemption, and also to secure to the vendor the free use of the premises during the year 1913. Boiled down, the transaction was a transfer of property to pay the debts of the vendor, with a stipulation of the right of redemption. In a similar case this court held that an act ostensibly a sale, the purchase of which was to extinguish a real indebtedness, is not a mortgage, but a giv-

ing in payment. See Keough v. [J.] Meyers & Co., 43 La.Ann. 952, 9 So. 913. In that case, as in this, the vendor remained in possession of the property."

In the Broussard case the consideration as expressed in the act of sale was the payment of two mortgages and a judgment encumbering the subject property therein, and we held the act of transfer to be a dation en paiement. In the instant case, though the stipulated consideration in the 1934 act of sale was that of cash, the deed was a transfer of property to pay the then unpaid debts of the vendor with a stipulation of the right of redemption. The fact that the vendor continued in physical possession of the property, with the consent of the vendee, in no way affects the legal rights of the parties herein insofar as delivery of the immovable is concerned, said delivery being legally complete by virtue of the authentic act itself. In the recent case of Succession of Dupre, 218 La. 907, 51 So.2d 317, 319, we held as follows: "Moreover, the delivery of immovables accompanies a public act transferring them by a sale or a dation en paiement, Article 2479, R.C.C.; Brown v. Brown, 30 La.Ann. 966; Jaubert v. Quilter, 48 La.Ann. 244, 19 So. 279; Succession of Curtis, 156 La. 243, 100 So. 412."

Defendant strongly urges that his attempts to exercise his rights of redemption within the redemption period were

met with the refusal of Coddou to accept the tendered redemption price, and that therefore his right to recover the property under the redemptive clause is legally preserved to this date, thereby entitling him to a reasonable time to pay the price of said redemption and thus be confirmed as the owner of said property. Defendant has not cited any law in support of this contention and we are not aware of any. However, we have carefully analyzed the testimony of the three witnesses relative to the alleged tenders, these events having occurred thirteen years prior to the date of trial and their testimony fails to convince us that the redemptive price was actually tendered on two occasions in 1935 and refused.

They testified that the alleged tenders were made by Gros to Louis Coddou while he was stationed in the bridge tender's shelter located in the middle of the bridge crossing Bayou Lafourche at Labadieville, Louisiana. On both occasions Coddou was alone, whereas the defendant's wife and his sister accompanied him to the bridge tender's shelter for the specific purpose of witnessing the tender.

The sister of the defendant testified in detail as to the alleged tender and particularly testified with a surprising measure of certainty as to the exact denominations of the bills which were allegedly tendered in July, 1935, this after an elapsed period of thirteen years. She further stated that

her brother had acquired the money from sales of movables situated on the property, from his income as a part-time carpenter, and that she had loaned him $200 of the sum tendered. Neither the defendant nor his wife identified the denominations of the bills tendered. The wife and the sister of the defendant testified that on both occasions the amount of the $1140 in currency was placed on a bunk or cot in the bridge tender's shelter, and which was refused by Coddou. Mr. Gros himself testified that in July he had the full sum of $1140, but that on the second occasion he did not display the packet of currency. Mr. & Mrs. Gros testified that after the alleged attempts to redeem the property Gros made no further attempt to pay the redemptive price. They both testified that in 1935 he sold various pieces of movable property in order to obtain the money to pay the redemptive price. None of the testimony relative to the sale of movables was corroborated by any disinterested witnesses or by any of the purchasers thereof. The record does not reveal the amount of income realized by Gros from his various ventures. It appears that expenditures were made by him to buy equipment for the two small mills operated by him and for certain improvements placed on the property in his farming operations, all of the benefits from which he alone enjoyed without any corresponding obligation whatever on his part of paying rent or taxes for the possession and use of the land from which the said activities were conducted. Whatever his income he made no attempts, other than the two occasions testified to, during the course of fifteen years to pay the purchase price under his redemptive rights. On the other hand, it appears that he suffered a lack of ready currency with which to discharge his obligations. This fact is significantly substantiated by the evidence that on October 31, 1934 a judgment was obtained and recorded by a third party against Gros for an unpaid debt in the sum of $322.38, together with interest and attorney's fees; that at the time of the alleged tenders in 1935 this judgment was still outstanding and unpaid. The said judgment was revived and reinstated on the mortgage records of the parish by virtue of a proceeding instituted for that purpose by the judgment creditor on September 28, 1944 and judgment signed on March 10, 1949. The record does not disclose that the said judgment creditor ever attempted to execute this monied judgment against any property or rights belonging to or enjoyed by Gros for the obvious reason that he had none.

Harry Coddou testified that he was cognizant of and had knowledge of most of his father's business and that to his knowledge no tender of the redemptive price had ever been made by Gros, but that on the contrary, in 1936 even after the redemption period had expired, Louis Coddou had

offered Gros the opportunity of redeeming the property. This offer was not accepted by Gros because of lack of funds.

Therefore we necessarily conclude that the subject transaction on its face is a sale transferring the property therein described, with the privilege or option of repurchasing said property within a limited period of time at the same price. Gros having failed to exercise his right within the time agreed on by him, a perfect legal title vested in Louis Coddou on January 10, 1936, the date of the expiration of the redemptive period. The act of 1934 was the deed of Gros as well as that of Coddou. We only enforce its terms and conditions and leave the defendant where he deliberately and solemnly chose to place himself.

For the reasons assigned the judgment of the trial court is reversed, annulled and set aside, and it is ordered, adjudged and decreed that there be judgment herein in favor of the plaintiffs, and against the defendant, recognizing the said plaintiffs to be the true and lawful owners of and, as such, entitled to the full and undisturbed possession of the following described property:

"A certain lot of ground situated in the Parish of Assumption, State of Louisiana, on the right descending bank of Bayou Lafourche, measuring one half arpent front on said Bayou Lafourche, on a depth of three acres, more or less; bounded below by Gaston Gros, now or formerly, above by Elphege Landry, and in the rear by Ernest LeBlanc; together with all the buildings and improvements thereon and thereunto belonging. It being the same property acquired by Chas. Gros from Leo LeBlanc on the 6th day of February, 1918 by act passed before Geo. S. Guion, Notary. Recorded in C. Book 56, folio 574.

"2nd: Another tract of land situated in the Parish of Assumption, and State of Louisiana, on the right descending bank of Bayou Lafourche, measuring one half arpent front on said Bayou Lafourche on a depth of Eighty arpents, more or less; bounded below by lands now or formerly of Neville LeBlanc, above by lands formerly belonging to Aurelien Dosset, in the rear by land formerly belonging to Marcellin Landry, between converging lines from the front to the forty arpent line and from the forty arpent line to the eighty arpent line, between opening lines, and containing in superficies Thirty-five arpents, more or less. Being the same property acquired by Charlie Gros from Ernest J. LeBlanc by act passed before Geo. S. Guion, on Dec. 17th, 1918, recorded in Conv. Book 57, folio 17, of Assumption Parish. Together with all the buildings and improvements on said property."

All costs to be paid by the defendant.

TATE, J., recused.