PRICE, Judge
(dissenting) :
I must respectfully dissent from the view of the majority in this case. The plaintiff’s right to a commission is recognized by the opinion if the transaction between Brangato and Sliman on April 7, 1967 was a contract of sale. The majority have re *623 lied solely on oral testimony given by parties having a pecuniary interest in the outcome of this suit, to vary the content of the written instrument which affects the right of a third party, in holding that the agreement constituted merely a pignorative contract.
Although plaintiff has acquired no real or personal right to the immovable property involved in this case, he has a contractual right resulting from his dealing with the property and should be regarded as a third party as defined in LSA-R.S. 9:2722 and thus protected by the law of registry contained in LSA-R.S. 9:2721.
The portion of LSA-R.S. 9:2722 applicable to plaintiff reads as follows:
“Third persons or third parties so protected by and entitled to rely upon the registry laws of Louisiana now in force and effect and as set forth in this Chapter are hereby redefined to be and to include any third person or third party dealing with any such immovable or immovable property * * (Emphasis supplied)
LSA-R.S. 9:2721 reads as follows:
“No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties. Acts 1950, 2nd Ex.Sess., No. 7, § 1.”
Even though the parol testimony is considered (although I do not concede it proper), I do not agree with the finding of fact made by the majority relative to the continued possession of the property by the vendor, Brangato. The opinion states that “the evidence is conclusive that Brangato retained possession * * *”
The property which is the subject of this controversy is a vacant lot situated on Line Avenue in the City of Shreveport. The only evidence in the record concerning the possession of the vacant lot after the act of sale on April 7, 1967, is the testimony of the two parties, Brangato and Sliman, that Brangato paid the taxes for that year (1967). They further testified that although Sliman kept the grass cut on the lot, Brangato reimbursed him for the costs. No documentary evidence showing payment was introduced to corroborate this testimony. In opposition the plaintiff introduced evidence showing the immediate placement of a sign on the property advertising it for sale and referring prospects to the business address of Sliman, which was adjacent to the lot in question. The defendant’s evidence is not sufficient to overcome the recital in the cash deed that delivery has been made by vendor and this fact acknowledged by both parties to the instrument. ■
The Supreme Court case of Coddou v. Gros, 235 La. 25, 102 So.2d 480 (1958) is more comparable to this case than the cases relied on by the majority. In the Cod-dou case a deed was executed containing a right of redemption for a specified period of time. The court even found that the vendor had remained in physical possession, but with the consent and acquiescence of the vendee. In spite of the continued possession of the vendor the court held that the evidence showed that the parties had intended it to be a bona fide sale with a right of redemption, using the following language:
“Considering all of the surrounding facts and circumstances, we conclude that the 1934 instrument was a valid sale with the right of redemption. The effect of the said redemptive clause constituted a personal advantage in favor of Gros to be exercised or waived at his option. Having allowed the period of redemption to expire he must be held to have waived such right, rendering said stipulation as between the parties as *624 though not written. Consequently upon his failure to exercise his right to redeem the property Coddou’s title thereto became absolute and unassailable.
“We consider the evidence conclusive that the parties did not intend the act of sale of 1934 to be a mere security but rather a bona fide sale with a right of redemption. The defendant herein executed a valid sale to his creditor in payment of his debt, stipulating his right of redemption. His failure to pay the price within the time agreed on in the contract forfeited his right of redemption and the title to the property was vested absolutely in the purchaser, Coddou. Furthermore, this act of sale concludes the defendant in the absence of error or fraud and establishes the nature of his possession as the possession of his vendee. Here there is no error or fraud alleged, much less proved.” Page 485.
Even by the testimony of the witnesses relied on by the majority, the transaction was intended to be a sale with the right of redemption. I quote from the testimony of the witness, Sliman, as follows:
“Q. You further testified that if the property weren’t sold in a year the deal would be all off. What did you mean by that ?
“A. Well, then, I would sell the property or keep the property, one of the two. In other words, if I sell the property for more than twenty-one five I get the profit.
“Q. In other words, if the property sold on April the 8th, say, 1968, for any price, the full price is yours ?
“A. Yes, sir.”
The evidence further reflects that Mr. Slim,an did not mortgage just this one piece of property for the exact amount of $21,500.00 to procure funds from the Commercial National Bank, but apparently mortgaged this property, along with other property already owned by him, as security for a loan totaling $71,000.00. The testimony of Mr. Sliman in this regard reads as follows:
“Q. And this mortgage is for how much, sir?
“A. Twenty-one five.
“Q. In order to get the Twenty-one £jyg ^ ‡ ‡
“A. No, the mortgage was for $71,000.-00.
“Q. Seventy-one Thousand?
“A. Yes, sir.”
Although Sliman testified he made oral arrangements with an official of the bank to release this property in1 payment of $21,500.00 on the indebtedness he owed to the bank, the official was not called as a witness to corroborate his testimony.
The evidence reflects that no note or other evidence of indebtedness was ever executed, nor was there any agreement for the payment of interest by the borrower. What was the motive or consideration for the alleged lender, Sliman, to advance this sum of money to the supposed borrower, Brangato ? There is no evidence of any family or personal relationship between these invididuals.
In the cases relied on by the majority the parties to the action were the vendor and vendee, of the sale under consideration, or their ancestors in title. The right of third parties was not being considered. In each of the cases where the court has found a “pignorative contract” rather than a contract of sale, no adequate amount was paid to the vendor for it to be considered a serious consideration to support a true sale. Jackson v. Golson, La.App., 91 So.2d 394 (2d Cir., 1957), and cases cited therein. In the case under consideration the sum of $21,500.00 is approximately the amount that the seller, Brangato, hoped to realize from this property. The testimony of Mr. Brangato is quoted as follows:
“Q. Did you tell him how much money you were trying to raise ?
*625 “A. Yes, sir, just the amount of what I had in the lot, Twenty-one five.”
For the foregoing reasons I am of the opinion that the transfer from Brangato to Sliman on April 7, 1967 could have been no more than a sale with a right of redemption as controlled by Article 2567 of the Louisiana Civil Code, and other articles under Chapter 8. To hold to the contrary on the basis of the oral testimony of the vendor and vendee alone would open the door to a means to evade the payment of a real estate commission lawfully contracted for by a vendor.